| | |
|---|---|
| 1 | **COZEN O'CONNOR** |
| 2 | Valerie D. Rojas (State Bar No. 180041) |
|   | vrojas@cozen.com |
| 3 | 601 South Figueroa Street, Suite 3700 |
| 4 | Los Angeles, CA  90017 |
|   | Telephone: (213) 892-7965 |
| 5 | Facsimile:  (213) 784-9076 |
| 6 | Counsel for Plaintiff |
| 7 | SCOTTSDALE INSURANCE COMPANY |

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, an Ohio corporation, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| BEACHCOMBER MANAGEMENT CRYSTAL COVE, LLC, a California limited liability company, | |
| and | |
| BEACHCOMBER AT CRYSTAL COVE, LLC, a California limited liability company, | |
| and | |
| SHAKE SHACK CRYSTAL COVE, LLC, a California limited liability company, | |
| and | |
| DOUGLAS CAVANAUGH, a California citizen, | |
| and | |
| RALPH KOSMIDES, a California citizen, | |
| Defendants. | |

For its Complaint against Defendants Beachcomber Management Crystal Cove, LLC ("BMCC"), Beachcomber at Crystal Cove, LLC ("BCC"), Shake Shack Crystal Cove, LLC ("SSCC"), Douglas Cavanaugh ("Cavanaugh"), and Ralph Kosmides ("Kosmides"), Plaintiff Scottsdale Insurance Company ("Scottsdale") states the following.

1. This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202, and 1332.

## PARTIES

2. Scottsdale is an insurance company duly organized and existing under the laws of the State of Ohio with its principal office located in Scottsdale, Arizona.

3. BMCC is a California limited liability company whose members are citizens of the State of California.

4. BCC is a California limited liability company whose members are citizens of the State of California.

5. SSCC is a California limited liability company whose members are citizens of the State of California.

6. Cavanaugh is a citizen of the State of California and, upon information and belief, is the founder and Chief Executive Officer of BMCC.

7. Kosmides is a citizen of the State of California and, upon information and belief, is a former managing member of BMCC.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Scottsdale and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are in this District and Division.

## FACTUAL ALLEGATIONS

### The Prior Policy

10. Underwriters at Lloyd's, London ("Underwriters") issued Directors and Officers Liability Insurance Policy No. AUGBC 00186J to BMCC and Ruby's Diner, Inc. ("RDI") effective for the period from September 1, 2019 to September 1, 2020 (the "Prior Policy"). A copy of the Prior Policy is attached hereto as "Exhibit 1."

### The Underlying Draft Complaint

11. On or about October 28, 2019, Underwriters received notice of a draft complaint to be filed by the Official Committee of Unsecured Creditors of RDI (the "Committee") against Cavanaugh and Kosmides in the United States Bankruptcy Court for the Central District of California (the "Underlying Draft Complaint"). A copy of the Underlying Draft Complaint is attached hereto as "Exhibit 2."

12. In the Underlying Draft Complaint, the Committee alleged that Cavanaugh and/or Kosmides caused RDI to enter into business arrangements with various entities in which Cavanaugh and Kosmides had a financial interest, including but not limited to BMCC, BCC, and SSCC, that were not in the best interest of RDI. (Ex. 2 ¶¶ 14-16.)

13. The Committee alleged in the Underlying Draft Complaint that Cavanaugh and Kosmides breached their fiduciary duties to RDI to ensure that RDI's business arrangements were made and performed at arm's length and were financially beneficial to RDI. (Ex. 2 ¶¶ 14-16.)

14. In the Underlying Draft Complaint, the Committee alleged causes of action for: (1) breach of fiduciary duty; (2) recovery of illegal dividends under Cal. Corp. Code §§ 500, 501 and 506; (3) disallowance of proofs of claim pursuant to 11 U.S.C. § 502(d); (4) equitable subordination of claims pursuant to 11 U.S.C. § 510(c); (5) permanent injunction pursuant to Cal. Civ. Code § 3439.07(a)(3)(A); and (6) permanent injunction pursuant to Cal. Civ. Code § 3439.07(a)(3)(C). (Ex. 2.)

**The Scottsdale Application**

15. On or about August 23, 2020, BMCC completed an Application for Business and Management (BAM) Indemnity Coverage (the "Scottsdale Application") and submitted it to Scottsdale.

16. In the Scottsdale Application, BMCC was asked about prior claims.

17. BMCC did not disclose the Underlying Draft Complaint in response to Scottsdale's questions.

**The Scottsdale Policy**

18. In reliance upon the information contained in the Application, Scottsdale issued claims-made-and-reported Business and Management Indemnity Policy number EKS3353648 to BMCC (the "Scottsdale Policy") effective for the policy period from November 1, 2020 to November 1, 2021 (the "Scottsdale Policy Period"). A copy of the Scottsdale Policy is attached hereto as "Exhibit 3."

19. Subject to the Scottsdale Policy's terms, conditions, limitations, exclusions, and endorsements, the Scottsdale Policy provides coverage under a Directors and Officers and Company Coverage Section (the "D&O Coverage Section") and an Employment Practices Coverage Section.

20. Insuring Agreement A(1) of the D&O Coverage Section states that Scottsdale shall pay the "Loss" of the "Directors and Officers" for which the "Directors and Officers" are not indemnified by the "Company" and which the "Directors and Officers" have become legally obligated to pay by reason of a "Claim" first made against the "Directors and Officers" during the Scottsdale Policy Period or, if elected, the "Extended Period," and reported to Scottsdale pursuant to Section E.1. herein, for any "Wrongful Act" taking place prior to the end of the Scottsdale Policy Period. (Ex. 3 at D&O Coverage Section § A(1).)

21. Insuring Agreement A(2) of the D&O Coverage Section states that Scottsdale shall pay the "Loss" of the "Company" for which the "Company" has indemnified the "Directors and Officers" and which the "Directors and Officers" have

become legally obligated to pay by reason of a "Claim" first made against the "Directors and Officers" during the Scottsdale Policy Period or, if elected, the "Extended Period," and reported to Scottsdale pursuant to Section E.1. herein, for any "Wrongful Act" taking place prior to the end of the Scottsdale Policy Period. (Ex. 3 at D&O Coverage Section § A(2).)

22. Insuring Agreement A(3) of the D&O Coverage Section states that Scottsdale shall pay the "Loss" of the "Company" which the "Company" becomes legally obligated to pay by reason of a "Claim" first made against the "Company" during the Scottsdale Policy Period or, if applicable, the "Extended Period," and reported to Scottsdale pursuant to Section E.1. herein, for any "Wrongful Act" taking place prior to the end of the Scottsdale Policy Period. (Ex. 3 at D&O Coverage Section § A(3).)

23. The Scottsdale Policy defines "Claim" to include, among other things:

a. a written demand against any Insured for monetary damages or non-monetary or injunctive relief;

b. a written demand by one or more of the securities holders of the Company upon the board of directors or the management board of the Company to bring a civil proceeding against any of the Directors and Officers on behalf of the Company;

c. a civil proceeding against any Insured seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

. . .

(Ex. 3 at D&O Coverage Section § B(1)(c), as amended by Endorsements No. 27, 33, and 41.)

COMPLAINT FOR DECLARATORY JUDGMENT

LEGAL\58659559\1

24. Section E(1) of the D&O Coverage Section, as amended by Endorsement No. 13 provides: "A Claim shall be deemed to have been first made against the Insureds on the date an Insured who is an executive officer, director or general counsel becomes aware of such Claim." (Ex. 3 at D&O Coverage Section § E(1), as amended by Endorsement No. 13.)

25. Section D(3) of the D&O Coverage Section states, in relevant part:

> All Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts shall be deemed to be a single Claim, and such Claim shall be deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the Policy Period . . . [t]he time at which the earliest Claim involving the same Wrongful Act or Interrelated Wrongful Acts is first made . . . .

(the "Single Claim Provision"). (Ex. 3 at D&O Coverage Section § D(3).)

26. "Wrongful Act" is defined in the Scottsdale Policy to mean, in pertinent part, any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by any of the "Directors and Officers" while acting in their capacity as such, or any matter claimed against any "Director and Officer" solely by reason of his or her serving in such capacity. (Ex. 3 at D&O Coverage Section § B(9)(a).)

27. "Interrelated Wrongful Acts" is defined in the Scottsdale Policy to mean: "all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes." (Ex. 3 at D&O Coverage Section § B(6).)

28. "Insured" is defined in the Scottsdale Policy to mean the "Company" and the "Directors and Officers." (Ex. 3 at D&O Coverage Section § B(5).)

29. The Scottsdale Policy defines "Company," in relevant part, to mean the "Parent Company," which is defined in the Declarations and Endorsement No. 1 to be

BMCC, BCC, Crystal Cove Transportation, Inc., SSCC, and "any Subsidiary." (Ex. 3 at General Terms & Conditions § B(2) and Declarations at Item 1.)

30. "Directors and Officers" is defined in the Scottsdale Policy to mean, in pertinent part, any person who was, now is, or shall become, a duly elected or appointed director, officer, or similar executive of the Company, or any member of the management board of the Company. (Ex. 3 at D&O Coverage Section § B(4)(a), as amended by Endorsements No. 5, 23, 30, and 39.)

31. The Scottsdale Policy defines "Loss," in relevant part, to include damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and "Costs, Charges and Expenses" incurred by Directors and Officers under Insuring Clauses 1. or 2., subject to various exceptions. (Ex. 3 at D&O Coverage Section § B(7), as amended by Endorsements No. 7 and 34.)

32. "Costs, Charges and Expenses" is defined in the Scottsdale Policy to mean, in pertinent part, reasonable and necessary legal costs, charges, fees and expenses incurred by any of the Insureds in defending Claims and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability. (Ex. 3 at D&O Coverage Section § B(3)(a).)

33. Section C(1)(b) of the D&O Coverage Section states that Scottsdale shall not be liable for Loss under the D&O Coverage Section on account of any Claim:

> alleging based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any involving:
>
> i. any Wrongful Act, fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this Policy is a renewal or replacement or which it succeeds in time; or

  ii.  any other Wrongful Act, whenever occurring, which together with a Wrongful Act which has been the subject of such prior notice, would constitute Interrelated Wrongful Acts.

(the "Prior Notice Exclusion"). (Ex. 3 at D&O Coverage Section § C(1)(b).)

34. The Scottsdale Policy states: "It shall be the duty of [Scottsdale] and not the duty of the Insureds to defend any Claim. Such duty shall exist even if any of the allegations are groundless, false or fraudulent. [Scottsdale]'s duty to defend any Claim shall cease when the Limits of Liability have been exhausted by the payment of Loss including Costs, Charges and Expenses." (Ex. 3 at D&O Coverage Section § F(1).)

35. The Scottsdale Policy further states: "the statements in the Application are [the Insureds'] representations, that such representations shall be deemed material to the acceptance of the risk or the hazard assumed by [Scottsdale] under this Policy, and . . . this Policy and each Coverage Section are issued in reliance upon the truth of such representations . . . ." (Ex. 3 at General Terms & Conditions § D(1).)

36. Section D(2) of the General Terms and Conditions of the Scottsdale Policy, as amended by Endorsement No. 22, states, in pertinent part:

> In the event the Application, including materials submitted or required to be submitted herewith, contains any misrepresentation or omission made with the intent to deceive, or contains any misrepresentation or omission which materially affects either the acceptance of the risk or hazard assumed by [Scottsdale] under this Policy, this Policy, including each and all Coverage Sections, shall not afford coverage to the following Insureds for any Claim alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any untruthful or inaccurate statements, representations or information:

      a.    any Insured who is a natural person and who knew the facts misrepresented or the omissions, whether or not such individual knew of the Application, such materials, or this Policy;

      b.    any Company or Sponsor Company to the extent it indemnifies any Insured referred to in subsection a. above; and

      c.    any Company, Sponsor Company, Plan, Employee Benefit Plan, or any other entity that is an Insured, if any past or present chief executive officer, chief financial officers, general counsel, risk manager or human resources director (or equivalent positions) of the Parent Company knew the facts misrepresented or the omissions, whether or not such individual know of the Application, such materials, or this Policy.

. . .

(the "Warranty Exclusion"). (Ex. 3 at General Terms & Conditions § D(2), as amended by Endorsement No. 22.)

## The Underlying Action

37. On or about March 11, 2021, Richard A. Marshack, Chapter 7 Trustee (the "Trustee") of the jointly-administered estates of RDI, Ruby's SoCal Diners, LLC, Ruby Quality Diners, LLC, Ruby's Huntington Beach, Ltd., Ruby's Laguna Hills, Ltd., Ruby's Oceanside Ltd., and Ruby's Palm Springs, Ltd. filed a lawsuit against Cavanaugh, Kosmides, BMCC, BCC, SSCC, and others, Case No. 8:18-bk-13311-SC, in the United States Bankruptcy Court for the Central District of California (the "Underlying Action").

38. In the complaint filed in the Underlying Action (the "Underlying Complaint"), the Trustee alleges that Cavanaugh and Kosmides, RDI's founders, diverted corporate opportunities from RDI to other entities controlled by Cavanaugh

and Kosmides and transferred RDI assets to those other entities owned and/or controlled by Cavanaugh and Kosmides without adequate consideration. A copy of the Underlying Complaint is attached hereto as "Exhibit 4."

39.   In the Underlying Action, the Trustee asserts the following causes of action: (1) breach of fiduciary duty (against Cavanaugh and Kosmides); (2) aiding and abetting breach of fiduciary duties (against BMCC, BCC, SSCC, and others); (3) avoidance of actually fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A) (against Cavanaugh and Kosmides); (4) avoidance of constructively fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B) (against Cavanaugh and Kosmides); (5) recovery of fraudulent transfers pursuant to 11 U.S.C. §§ 550 and 551; (6) avoidance and recovery of actually fraudulent transfers pursuant to 11 U.S.C. § 544 and Cal. Civ. Code § 3439.04; (7) avoidance and recovery of constructively fraudulent transfers pursuant to 11 U.S.C. § 544 and Cal. Civ. Code § 3439.05; (8) recovery of illegal dividends under Cal. Corp. Code §§ 500, 501 and 506 (against Cavanaugh and Kosmides); (9) equitable subordination of claims pursuant to 11 U.S.C. § 510(c); (10) permanent injunction pursuant to Cal. Civ. Code § 3439.07(a)(3)(A); (11) permanent injunction pursuant to Cal. Civ. Code § 3439.07(a)(3)(C); (12) breach of contract (against Cavanaugh and Kosmides); (13) money lent (against Cavanaugh and Kosmides); (14) open book account (against Cavanaugh and Kosmides); (15) violation of Cal. Penal Code § 496(c); (16) accounting; (17) constructive trust; and (18) misappropriation of trade secrets. (Ex. 4.)

40.   In the Underlying Action, the Trustee seeks damages in excess of $35 million; interest; punitive damages; transfer of ownership and management of BMCC, SSCC, and others; injunctive relief; treble damages; and attorney's fees and costs. (Ex. 4.)

## Scottsdale's Coverage Position

41.   After Scottsdale was provided with notice of the Underlying Action, on or about May 3, 2021, Scottsdale sent a letter and an e-mail to the Insureds indicating

that there was no coverage for the Underlying Action under the Scottsdale Policy by virtue of the Prior Notice Exclusion, because the Underlying Action constitutes a Claim that was first made prior to the Scottsdale Policy Period, and by virtue of the Warranty Exclusion due to the Insureds' failure to disclose the Underlying Draft Complaint in response to the Prior and Pending Question and the Prior Claim Question in the Scottsdale Application. In addition, Scottsdale reserved all of its rights under the Scottsdale Policy and at law. Copies of Scottsdale's May 3, 2021 letter and e-mail to the Insureds are attached hereto as "Exhibit 5."

## COUNT I – DECLARATORY JUDGMENT AS TO PRIOR NOTICE EXCLUSION

42.  Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.  An actual, present, and justiciable controversy exists concerning whether the Prior Notice Exclusion bars coverage for the Underlying Action under the Scottsdale Policy.

44.  Scottsdale requests that the Court declare that the Prior Notice Exclusion bars coverage for the Underlying Action under the Scottsdale Policy and, as a result, Scottsdale has no duty to defend and/or indemnify the Insureds under the Scottsdale Policy in connection with the Underlying Action.

## COUNT II – DECLARATORY JUDGMENT AS TO SINGLE CLAIM FIRST MADE PRIOR TO SCOTTSDALE POLCY PERIOD

45.  Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46.  An actual, present, and justiciable controversy exists concerning whether the Underlying Action constitutes a Claim that was first made prior to the Scottsdale Policy Period.

47.  Scottsdale requests that the Court declare that the Underlying Action does not constitute a Claim that was first made during the Scottsdale Policy Period and, as a

result, the Underlying Action does not fall within the scope of coverage of the Scottsdale Policy and, therefore, Scottsdale has no duty to defend and/or indemnify the Insureds under the Scottsdale Policy in connection with the Underlying Action.

## COUNT III – DECLARATORY JUDGMENT AS TO WARRANTY EXCLUSION

48. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. An actual, present, and justiciable controversy exists concerning whether the Warranty Exclusion bars coverage for the Underlying Action under the Scottsdale Policy.

50. Scottsdale requests that the Court declare that the Warranty Exclusion bars coverage for the Underlying Action under the Scottsdale Policy and, as a result, Scottsdale has no duty to defend and/or indemnify the Insureds under the Scottsdale Policy in connection with the Underlying Action.

## PRAYER FOR RELIEF

**WHEREFORE**, Scottsdale prays that this Court enter an Order:

1. declaring that the Prior Notice Exclusion bars coverage for the Underlying Action under the Scottsdale Policy and, as a result, Scottsdale has no duty to defend and/or indemnify the Insureds under the Scottsdale Policy in connection with the Underlying Action;

2. declaring that the Underlying Action does not constitute a Claim that was first made during the Scottsdale Policy Period and, as a result, the Underlying Action does not fall within the scope of coverage of the Scottsdale Policy and, therefore, Scottsdale has no duty to defend and/or indemnify the Insureds under the Scottsdale Policy in connection with the Underlying Action;

3. declaring that the Warranty Exclusion bars coverage for the Underlying Action under the Scottsdale Policy and, as a result, Scottsdale has no duty to defend

and/or indemnify the Insureds under the Scottsdale Policy in connection with the Underlying Action.

    4.    awarding Scottsdale its costs and expenses together with pre- and post-judgment interest to the greatest extent allowed by law; and

    5.    awarding Scottsdale all other relief that the Court deems just and equitable.

DATED: July 12, 2022        **COZEN O'CONNOR**

By: /s/*Valerie D. Rojas*
    Valerie D. Rojas
    Attorneys for Plaintiff
    SCOTTSDALE INSURANCE COMPANY