# EXHIBIT 1



# Lloyd's Certificate

**This Insurance** is effected with certain Underwriters at Lloyd's, London.

**This Certificate** is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

**The Assured** is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

All inquiries regarding this Certificate should be addressed to the following Correspondent:

**Allegiance Underwriting Group**
5010 Fairview  #3
Downers Grove, IL  60515
In California only: DBA: Allegiance Executive & Professional Liability
Insurance Services, Inc.

**SLC-3 (USA)** NMA 2868 (24/08/2000) - amended
Form approved by Lloyd's Underwriters' Non-Marine Association Limited



# Directors and Officers Liability Policy

THIS POLCY CONSISTS OF:

- - DECLARATIONS
- - COMMON POLICY CONDITIONS
- - APPLICABLE FORMS AND ENDORSEMENTS

**CERTIFICATE PROVISIONS**

1.  **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2.  **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters at Lloyd's, London whose syndicate numbers can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

3.  **Cancellation.** If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4.  **Service of Suit.** It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in the attached Declaration Page, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

    The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

    Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

5.  **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

6.  **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

7.  **Short Rate Cancellation.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

**Short Rate Cancellation Table For Term of One Year.**

| Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6 | 70 - 73 | 30 | 157 - 160 | 54 | 261 - 264 | 78 |
| 3 - 4 | 7 | 74 - 76 | 31 | 161 - 164 | 55 | 265 - 269 | 79 |
| 5 - 6 | 8 | 77 - 80 | 32 | 165 - 167 | 56 | 270 - 273 ( 9 mos ) | 80 |
| 7 - 8 | 9 | 81 - 83 | 33 | 168 - 171 | 57 | 274 - 278 | 81 |
| 9 - 10 | 10 | 84 - 87 | 34 | 172 - 175 | 58 | 279 - 282 | 82 |
| 11 - 12 | 11 | 88 - 91 ( 3 mos ) | 35 | 176 - 178 | 59 | 283 - 287 | 83 |
| 13 - 14 | 12 | 92 - 94 | 36 | 179 - 182 ( 6 mos ) | 60 | 288 - 291 | 84 |
| 15 - 16 | 13 | 95 - 98 | 37 | 183 - 187 | 61 | 292 - 296 | 85 |
| 17 - 18 | 14 | 99 - 102 | 38 | 188 - 191 | 62 | 297 - 301 | 86 |
| 19 - 20 | 15 | 103 - 105 | 39 | 192 - 196 | 63 | 302 - 305 ( 10 mos ) | 87 |
| 21 - 22 | 16 | 106 - 109 | 40 | 197 - 200 | 64 | 306 - 310 | 88 |
| 23 - 25 | 17 | 110 - 113 | 41 | 201 - 205 | 65 | 311 - 314 | 89 |
| 26 - 29 | 18 | 114 - 116 | 42 | 206 - 209 | 66 | 315 - 319 | 90 |
| 30 - 32 ( 1 mos ) | 19 | 117 - 120 | 43 | 210 - 214 ( 7 mos ) | 67 | 320 - 323 | 91 |
| 33 - 36 | 20 | 121 - 124 ( 4 mos ) | 44 | 215 - 218 | 68 | 324 - 328 | 92 |
| 37 - 40 | 21 | 125 - 127 | 45 | 219 - 223 | 69 | 329 - 332 | 93 |
| 41 - 43 | 22 | 128 - 131 | 46 | 224 - 228 | 70 | 333 - 337 ( 11 mos ) | 94 |
| 44 - 47 | 23 | 132 - 135 | 47 | 229 - 232 | 71 | 338 - 342 | 95 |
| 48 - 51 | 24 | 136 - 138 | 48 | 233 - 237 | 72 | 343 - 346 | 96 |
| 52 - 54 | 25 | 139 - 142 | 49 | 238 - 241 | 73 | 347 - 351 | 97 |
| 55 - 58 | 26 | 143 - 146 | 50 | 242 - 246 ( 8 mos ) | 74 | 352 - 355 | 98 |
| 59 - 62 ( 2 mos ) | 27 | 147 - 149 | 51 | 247 - 250 | 75 | 356 - 360 | 99 |
| 63 - 65 | 28 | 150 - 153 ( 5 mos ) | 52 | 251 - 255 | 76 | 361 - 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A.  If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B.  If insurance has been in force for more than one year:
    1.  Determine full annual premium as for insurance written for a term of one year.
    2.  Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.
    3.  Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

8.  The Certificate is intended for use as evidence of the placement of the insurance described herein, in accordance with Section 1764 of the California Insurance Code.

## NOTICE:

1. **THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**

2. **THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

3. **THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

4. **THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER 1-800-927-4357.  ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG .**

5. **FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

6. **FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

7. **CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV .**

8. **IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU**

**07/11
LSW1147D**

THIS IS A CLAIMS MADE AND REPORTED POLICY. SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO ANY **CLAIM** FIRST MADE AGAINST THE **INSUREDS** DURING THE **POLICY PERIOD**, PROVIDED SUCH **CLAIM** IS REPORTED IN WRITING TO UNDERWRITERS AS SOON AS PRACTICABLE IN ACCORDANCE WITH THE NOTICE PROVISION HEREIN. AMOUNTS INCURRED AS **DEFENSE COSTS** SHALL REDUCE AND MAY EXHAUST THE APPLICABLE LIMITS OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. PLEASE READ THIS POLICY CAREFULLY.

These Declarations along with the completed and signed **Application** and the Policy with endorsements shall constitute the contract between the **Insureds** and Underwriters.

**Underwriters:**    Syndicate 2623/623 at Lloyd's

**Policy Number:**   AUGBC 00186J

Renewal of:       AUGBC 00186I

Item 1.  **Parent Company**: Ruby's Diner,Inc. and Beachcomber Management Crystal Cove, LLC

Principal Address: 4100 MacArthur Blvd, Ste 300, Newport Beach, CA 92660

Item 2.  **Policy Period**:
From:  September 1, 2019

To:    September 1, 2020

Both dates at 12:01 a.m. Local Time at the Principal Address stated in Item 1.

Item 3.  Limit of Liability:

a.  $2,000,000  per **Claim** under Insuring Clauses I.A., I.B. and I.C.

b.  $250,000 per **Derivative Demand** under Insuring Clause I.D. and in the aggregate for the **Policy Period**.

c.  $2,000,000 per **Claim** under Insuring Clause I.E. and in the aggregate for the **Policy Period.**

d.  NIL per **Claim** under Insuring Clause I.F., if purchased  (Purchase of **Third Party Wrongful Acts** coverage indicated by a monetary Limit amount  here in this Item 3.d.)

e.  $2,000,000 in the aggregate for the **Policy Period** for all **Claims**  and **Derivative Demands** combined under Insuring Clauses I.A., I.B., I.C., I.D., I.E. and I.F., if purchased.

f.  $100,000 as a Supplemental Limit for **Claims** made against **Insured Persons** under Insuring Clause I.A. per **Claim** and in the aggregate for the **Policy Period** in accordanc

with Clause IV.A.2.(a). (Purchase of Supplemental Limit indicated by a monetary Limit amount here in this Item 3.f.)

g.   NIL as an Additional Defense Limit in accordance with Clause IV.A.2.(b). (Purchase of Additional Defense Limit indicated by a monetary Limit amount here in this Item 3.g.)

Item 4.    Retentions:

| | |
|---|---|
| $15,000 | each **Claim** under Insuring Clauses I.B., other than a **Claim** for an **Employment Wrongful Act** or a **Third Party Wrongful Act** |
| $15,000 | each **Claim** under Insuring Clauses I.C., other than a **Claim** for an **Employment Wrongful Act** or a **Third Party Wrongful Act** |
| USD NIL | each **Claim** for an **Employment Wrongful Act** under Insuring Clauses I.B. or I.C. |
| USD NIL | each **Claim** under Insuring Clause I.D. |
| $15,000 | each **Claim** under Insuring Clause I.E. |
| USD NIL | each **Claim** under Insuring Clause I.F. |

Item 5.  Defense Option:

Duty-to-Defend  [ X ]   If this box is checked this Policy shall be a Duty-to-Defend policy as described in Clause V.A. of the Policy.

Non Duty-to-Defend  [  ]   If this box is checked this Policy shall be a Non Duty-to-Defend policy as described in Clause V.B. of the Policy.

If no box is checked, this Policy shall be a Duty-to-Defend policy as described in Clause V.A. of the Policy.

Item 6.    Premium:                    $21,145  plus $100 Policy Fee

Item 7.   Optional Extension Period:

a. Premium for **Optional Extension Period:**    100% of the total premium for the Policy

b. Length of **Optional Extension Period:**    12 months

a. Premium for **Optional Extension Period:**    120% of the total premium for the Policy

b. Length of **Optional Extension Period:**    24 months

a. Premium for **Optional Extension Period:**    140% of the total premium for the Policy

b. Length of **Optional Extension Period:**    36 months

Item 8.    Notification under this Policy:

      a.    Notification pursuant to Clause VI shall be given to:    Claims Department Beazley
Email  claims@beazley.com

Item 9.    Prior Knowledge Date: May 29, 2009

Item 10.    Service of process in any suit shall be made upon:  Eileen Ridley, FLWA Service Corp., c/o Foley & Lardner LLP, 555 California Street, Suite 1700,  San Francisco, CA 94104-1520, USA

Item 11.    Choice of Law: New York, USA

Item 12.    Terrorism Coverage: Included

Item 13.    Endorsements Effective at Inception:

Application Dated: August 14, 201**9**
California Mandatory Disclosure Clause – LSW 1147D
LSW 1001 Several Liability Clause
Nuclear Incident Exclusion Clause - Liability - Direct - Broad - NMA 1256
Radioactive Contamination Exclusion - Liability - Direct - NMA 1477
War and Terrorism Exclusion – NMA 2918
Small Additional or Return Premiums Clause (U.S.A.) – NMA 1168
US Terrorism Risk Insurance Act of 2002 as amended New Renewal Business LMA5218 (1_2015)
Specific Matter Exclusion
Deletion Coverage for Employment Practices Wrongful Acts
Ruby's Diner Inc. Increasing Side A Endorsement - as expiring

**Dated:**  September 20, 2019

Alan Janes

Digitally signed by Alan Janes
Date: 2019.09.20
18:30:16 -05'00'

Authorised Signature
Allegiance Underwriting Group (Corr

**BEAZLEY ONE**
**PRIVATE COMPANY LIABILITY INSURANCE POLICY**

In consideration of the payment of the premium, in reliance on all statements made in the **Application**, and subject to all of the provisions of this Policy, the Underwriters and the **Parent Company**, on behalf of all **Insureds**, agree as follows:

I.     **INSURING CLAUSES**

A.     The Underwriters shall pay on behalf of the **Insured Persons** all **Loss** which is not indemnified by the **Company** resulting from any **Claim** first made against the **Insured Persons** during the **Policy Period** for a **Wrongful Act** provided such **Claim** is reported in writing to the Underwriters as soon as practicable but in no event later than the earliest of the following times:

1.     sixty (60) days after the date an **Executive Officer** becomes aware of such **Claim**, or

2.     sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

B.     The Underwriters shall pay on behalf of the **Company** all **Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Insured Persons** resulting from any **Claim** first made against the **Insured Persons** during the **Policy Period** for a **Wrongful Act** provided such **Claim** is reported in writing to the Underwriters as soon as practicable but in no event later than the earliest of the following times:

1.     sixty (60) days after the date an **Executive Officer** becomes aware of such **Claim**, or

2.     sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

C.     The Underwriters shall pay on behalf of the **Company** all **Loss** resulting from any **Claim** first made against the **Company** during the **Policy Period** for a **Wrongful Act** provided such **Claim** is reported in writing to the Underwriters as soon as practicable but in no event later than the earliest of the following times:

1.     sixty (60) days after the date an **Executive Officer** becomes aware of such **Claim**, or

2.     sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

D.     The Underwriters shall pay on behalf of the **Company** all **Costs of Investigation** resulting from any **Derivative Demand** first made during the **Policy Period** for a **Wrongful Act** provided such **Derivative Demand** is reported in writing to the Underwriters as soon as practicable but in no event later than the earliest of the following times:

1.     sixty (60) days after the date an **Executive Officer** becomes aware of such **Derivative Demand**, or

2. sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

E. The Underwriters shall pay on behalf of the **Insured Persons** all **Loss** resulting from any **Claim** first made against the **Insured Persons** during the **Policy Period** for a **Wrongful Act** committed while serving in an **Outside Executive Position** provided such **Claim** is reported in writing to the Underwriters as soon as practicable but in no event later than the earliest of the following times:

1. sixty (60) days after the date an **Executive Officer** becomes aware of such **Claim**, or

2. sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

The coverage afforded by this Insuring Clause shall be specifically excess of any indemnification and insurance available to such **Insured Persons** from the **Outside Entity.**

F. The Underwriters shall pay on behalf of the **Insureds** all **Loss** resulting from any **Claim** first made against any of the **Insureds** during the **Policy Period** for a **Third Party Wrongful Act** provided such **Claim** is reported in writing to the Underwriters as soon as practicable but in no event later than the earliest of the following times:

1. sixty (60) days after the date an **Executive Officer** becomes aware of such **Claim**, or

2. sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

This Insuring Clause only applies if Item 3.d. of the Declarations indicates that the **Insureds** have purchased coverage for **Third Party Wrongful Acts**.

## II.   DEFINITIONS

The following terms whenever used in this Policy in boldface type shall have the meanings indicated.

A. "**Affiliate**" means:

1. any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or

2. any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

B. "**Application**" means all applications, including all attachments and other materials submitted therewith or incorporated therein, and any other documents or information submitted in connection with the underwriting of this Policy, including any endorsement or other part thereof, or any other directors, officers or corporate liability or employment practices liability policies of which this Policy is a renewal, replacement or which it succeeds in time.

C. **"Change of Control"** means:

1. the acquisition by any person or entity of more than 50% of the outstanding securities or equity interest of the **Parent Company** representing the present right to vote for the election of directors; or

2. the merger of the **Parent Company** into another entity such that the **Parent Company** is not the surviving entity.

D. **"Claim"** means:

1. a written demand for monetary damages or non-monetary relief against any of the **Insureds**;

2. a civil, administrative, investigative or regulatory proceeding initiated against any of the **Insureds**, including any proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body, commenced by:

   (a) the service of a complaint or similar pleading;

   (b) the filing of a notice of charges, investigative order or similar document; or

   (c) written notice or subpoena from an investigatory authority identifying such **Insured** as an entity or person against whom a formal proceeding may be commenced;

3. a criminal investigation or proceeding initiated against any of the **Insured Persons** commenced by:

   (a) the return of an indictment or similar pleading; or

   (b) written notice or subpoena from an investigatory authority identifying such **Insured Persons** as an individual against whom a formal proceeding may be commenced;

4. solely for the purpose of coverage afforded under Insuring Clause I.D., a **Derivative Demand**;

5. a written request received by any of the **Insureds** to toll or waive a statute of limitations;

6. in the context of an audit conducted by the Office of Federal Contract Compliance Programs, a Notice of Violation or Order to Show Cause; or

7. an arbitration or mediation or other alternative dispute resolution proceeding if the **Company** is obligated to participate in such proceeding or if the **Company** agrees to participate in such proceeding with the Underwriter's prior written consent, such consent not to be unreasonably withheld.

   However, **Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

E. **"Company"** means the **Parent Company** identified in Item 1. of the Declarations and its **Subsidiaries**, including any such organization as a debtor in possession within the meaning of the United States Bankruptcy Code or similar legal status under foreign law.

F. **"Costs of Investigation"** means reasonable and necessary legal fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the **Insured Persons** or **Employees** or the **Company's** overhead expenses) incurred by the **Company** (including its board of directors or any committee of its board of directors) in connection with the investigation or evaluation of any **Derivative Demand**.

G. **"Defense Costs"** means reasonable and necessary legal fees and expenses to which the Underwriters consent in advance and which are incurred by or on behalf of the **Insureds** in defending, settling, appealing or investigating any **Claim** and the cost of appeal, supersedeas, injunction, attachment or similar bonds (provided, however, the Underwriters shall have no obligation to apply for or furnish any bond for appeal, supersedeas, injunction, attachment or any similar purpose), but shall not include salaries, regular or overtime wages, fees or benefit expenses associated with **Insured Persons** or **Employees** or the **Company's** overhead expenses. **Defense Costs** means only "**Costs of Investigation**" for the purpose of coverage afforded under Insuring Clause I.D.

H. **"Derivative Demand"** means a written demand by one or more owners of voting securities of the **Company** upon the board of directors of the **Company** to bring a civil proceeding in a court of law against any of the **Insured Persons** for a **Wrongful Act**.

I. "**Discrimination**" means any actual or alleged termination of the employment relationship, demotion, failure or refusal to hire or promote, denial of an employment benefit or the taking of any adverse or differential employment action because of race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis prohibited by federal, state or local law.

J. **"Employee"** means all persons whose labor or service is currently or has formerly been engaged by and directed by the **Company**. This includes volunteers, part time, seasonal, leased and temporary **Employees** as well as any individual employed in a supervisory or managerial position and **Independent Contractors**, but does not include **Employees** who are leased to another employer.

K. **"Employment Wrongful Act"** means **Inappropriate Employment Conduct**, **Discrimination**, **Harassment**, and/or **Retaliation** by any of the **Insureds** against an **Employee** or an applicant for employment of the **Company**.

L. **"Executive Officer"** means the chairperson, chief executive officer, chief operating officer, president, **Manager**, chief financial officer, in-house general counsel, risk manager, human resources staff or an individual acting in a similar capacity with the **Company**.

M. **"Financial Impairment"** means the appointment by any state or federal official, agency or court of any receiver, trustee, examiner, conservator, liquidator, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Company.**

N.   "**Harassment**" means actual or alleged unwelcome sexual advances, requests for sexual favors or other verbal, visual or physical conduct of a sexual or non-sexual nature, where such harassment is based on an **Employee's** race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis protected by federal, state or local law and is explicitly or implicitly made a condition of employment, used as a basis for employment decisions or performance, or creates a hostile, intimidating or offensive work environment or that interferes with performance.

O.   "**Inappropriate Employment Conduct**" means any of the following:

1.   actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful;

2.   actual or alleged wrongful demotion, evaluation, deprivation of a career opportunity, or discipline;

3.   actual or alleged breach of an express written employment agreement;

4.   actual or alleged misrepresentation in connection with an employment decision;

5.   actual or alleged violation of the Family and Medical Leave Act;

6.   actual or alleged false imprisonment, detention or malicious prosecution in connection with an employment decision;

7.   actual or alleged libel, slander, defamation of character or any invasion of right of privacy in connection with an employment decision; or

8.   actual or alleged failure to employ or promote, train, create or enforce adequate workplace or employment policies and procedures, or grant tenure or seniority.

P.   "**Independent Contractor**" means any natural person independent contractor who performs labor or service for the **Company** on a full-time basis pursuant to a written contract or agreement, where such labor or service is under the exclusive direction of the **Company**.  The status of an individual as an **Independent Contractor** shall be determined as of the date of an alleged **Employment Wrongful Act** or **Third Party Wrongful Act**, if purchased.

Q.   "**Insureds**" means the **Insured Persons** and the **Company**.

R.   "**Insured Persons**" means:

1.   all persons who were, now are, or shall be duly elected or appointed directors, officers, trustees or **Managers** of the **Company** including all persons outside the United States serving in a functionally equivalent role for the **Company**;

2.   to the extent any **Claim** is for an **Employment Wrongful Act** or a **Third Party Wrongful Act**, all persons who were, now are, or shall be **Employees**; and

3.   the lawful spouse, including any natural person qualifying as a domestic partner under the provisions of any applicable federal, state, or local law in the United States, of any of the persons set forth in subparagraph 1 and 2 of this definition, but solely by reason of such

spousal status or such spouse's ownership interest in property or assets that are sought as recovery for **Wrongful Acts**;

including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

S.  **"Interrelated Wrongful Acts"** means any and all **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

T.  **"Loss"** means money which an **Insured** is legally obligated to pay as a result of a **Claim** including compensatory damages, judgments (including prejudgment and post judgment interest awarded against an **Insured** on that part of any judgment paid by the Underwriters), back pay, front pay, settlements, statutory attorney fees, **Defense Costs** and punitive, exemplary and multiple damages where the law in the applicable jurisdiction allows coverage for punitive, exemplary or multiple damages.

However, **Loss** shall not include any of the following:

1.  the cost of providing non-monetary relief (this provision does not apply to **Defense Costs** where non-monetary relief is sought);

2.  costs incurred by any of **Insureds** to modify or adapt any building or property in order to make such building or property more accessible or accommodating to any disabled person; costs associated with eliminating non-essential duties from the job description of a disabled person; costs associated with providing a disabled person with reasonable workplace accommodations; and costs associated with lost productivity by an employer as the result of making a reasonable workplace accommodation for a disabled person;

3.  insurance plan benefits claimed by or on behalf of retired **Employees**, or to which a claimant would have been entitled as an **Employee** had any **Insured** provided the claimant with a continuation of insurance;

4.  civil or criminal fines, penalties, sanctions, liquidated damages (other than those awarded under the Age Discrimination in Employment Act or the Equal Pay Act); payroll or other taxes or other matters that may be deemed uninsurable according to the law under which this Policy is construed;

5.  amounts owed under **Wage and Hour Laws**;

6.  commissions, bonuses, profit sharing or benefits including but not limited to medical, stock options, vacation, holiday, and/or sick pay;

7.  severance pay;

8.  damages representing amounts allegedly owed under an express written contract of employment or obligation to make payments, including consequential and liquidated damages;

9. future salary, wages, bonus, commissions and/or benefits resulting from a settlement of a **Claim**, judgment, order or award that results in the rehiring, promotion or reinstatement of an **Employee**;

10. awards, costs, judgments, or orders resulting from contempt of court or violation of a court order or administrative decree;

11. damages representing payment, incentive, or other compensation that is granted in the form of securities or options to purchase securities of an **Insured** or based on the value of such securities or options;

12. any investigative costs other than **Costs of Investigation** or **Defense Costs** in connection with a **Claim**; or

13. any amounts incurred in defense of any **Claim** for which any other insurer has a duty to defend.

U. **"Managers"** means all persons who were, now are, or shall be managers, managing members, members of the board of managers or equivalent executives of the **Company** that is a limited liability corporation.

V. **"Optional Extension Period"** means the period described in Clause VIII.

W. **"Outside Entity"** means:

1. any non-profit corporation, community chest, fund or foundation that is not included in the definition of the **Company** and that is exempt from federal income tax as an organization described in section 501(c)(3) of the Internal Revenue Code of 1986, as amended; or

2. any other entity, if specified in an endorsement to this Policy.

X. **"Outside Executive Position"** means the position of director, officer, trustee or other equivalent executive position held by any of the **Insured Persons** in an **Outside Entity** if service in such position is at the specific request of the **Company.**

Y. **"Parent Company"** means the entity designated in Item 1. of the Declarations.

Z. **"Policy Period"** means the period from the effective date and hour of this Policy to the Policy expiration date and hour as set forth in Item 2. of the Declarations, or its earlier termination, if any, or the end of the **Optional Extension Period**, if purchased.

AA. **"Pollutants"** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, mold, spores, fungi, germs, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil product, infectious or medical waste, asbestos or asbestos product, lead or lead product, noise, and electric, magnetic or electromagnetic field.

BB. "**Retaliation**" means any actual or alleged **Discrimination**, **Harassment**, and/or **Inappropriate Employment Conduct** against an **Employee** on account of such **Employee's** exercise or attempted exercise of rights protected by law, refusal to violate any law, disclosure or threat to disclose to a superior or to any governmental agency alleged violations of the law, or on account of the **Employee** having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law.

CC. "**Subsidiary**" means:

1. any entity, while more than 50% of the outstanding voting securities representing the present right to vote for the election of such entity's directors are owned by the **Parent Company** directly or indirectly,

2. any limited liability corporation while the right to elect or otherwise appoint or designate more than 50% of such limited liability corporation's **Managers** is owned or controlled by the **Parent Company** directly or indirectly, or

3. any joint venture, which is a corporate entity, while the **Parent Company** has managerial control, or while the right to elect or otherwise appoint more than 50% of such entity's directors, trustees or other equivalent executive is owned or controlled by the **Parent Company** directly or indirectly,

if such entity or corporation:

(a) was so owned or controlled prior to the inception date of this Policy and was insured under a policy issued by the Underwriters of which this Policy is a renewal;

(b) was so owned or controlled on the inception date of this Policy;

(c) becomes so owned or controlled after the inception date of this Policy and does not trade its securities on any public stock exchange provided that both:

(i) the assets of the entity or corporation do not exceed 25% of the consolidated assets of the **Company** as set forth in the **Company's** most recent audited financial statement; and

(ii) the total number of employees of the entity or corporation do not exceed 25% of the total number of **Employees** of the **Company** at the time of the acquisition; or

(d) becomes so owned or controlled after the inception date of this Policy and does not trade its securities on any public stock exchange provided that the provisions of Clause VII.B.1. have to be fulfilled if either:

(i) the assets of the entity or corporation exceed 25% of the consolidated assets of the **Company** as set forth in the **Company's** most recent audited financial statement; or

(ii) the total number of employees of the entity or corporation exceed 25% of the total number of **Employees** of the **Company** at the time of the acquisition.

DD. **"Third Party Wrongful Act"** means any actual or alleged discrimination, including discriminatory harassment, by any of the **Insureds** against any natural person who is not an **Employee** or an applicant for employment of the **Company**.

EE. **"Wage and Hour Law"** means any federal, state or local law governing or relating to the payment of wages including the payment of overtime, on-call time, rest periods, minimum wages or the classification of employees for the purpose of determining employees' eligibility for compensation or other benefits under such law(s)  including any statutory or common law premised on such law.

FF.  **"Wrongful Act"** means:

1. any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, act or omission by:

    (a) any of the **Insured Persons** solely in their capacity as such;

    (b) any of the **Insured Persons** while in an **Outside Executive Position** solely with respect to the coverage afforded under Insuring Clause I.E;

    (c) the **Company** solely with respect to the coverage afforded under Insuring Clause I.C.;

2. any matter claimed against any of the **Insured Persons** solely by reason of their serving in such capacity or in an **Outside Executive Position** solely with respect to the coverage afforded under Insuring Clause I.E.;

3. an **Employment Wrongful Act**; or

4. solely with respect to Insuring Clause I.F., a **Third Party Wrongful Act**.

## III.   EXCLUSIONS

The Underwriters shall not be liable to make any payment for **Loss** in connection with or resulting from any **Claim**:

A. for actual or alleged libel, slander, defamation, bodily injury, sickness, disease, death, false arrest, false imprisonment, assault, battery, mental anguish, emotional distress, invasion of privacy,  or damage to or destruction of tangible property (including loss of use thereof); provided, however, this exclusion shall not apply to that portion of a **Claim** for an **Employment Wrongful Act** for libel, slander, defamation, mental anguish, emotional distress, false imprisonment or invasion of privacy; or that portion of a **Claim** for a **Third Party Wrongful Act** for mental anguish or emotional distress;

B. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1. any **Wrongful Act** or any fact, circumstance or situation of which any **Executive Officer** was aware prior to the applicable Prior Knowledge Date as shown in Item 9. of the Declarations;

2. any **Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given prior to the **Policy Period** under any other policy, or which was the subject of any prior proceeding against any **Insured**, or which has been or should have been identified in the **Application**; or

3. any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** which has been the subject of such knowledge, proceeding or notice, would constitute **Interrelated Wrongful Acts**;

C. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1. the actual, alleged or threatened discharge, release, escape, seepage, migration, dispersal or disposal of **Pollutants** into or on real or personal property, water or the atmosphere; or

2. any direction or request that the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so (such costs hereinafter "Clean Up Costs") including, but not limited to, any **Claim** alleging damage to the **Company** or its securities holders, purchasers or sellers; provided, however, this exclusion shall not apply to:

    (a) the extent such **Claim** is otherwise covered under Insuring Clause I.A., other than Clean Up Costs; or

    (b) the extent such **Claim** is for **Retaliation**; or

    (c) **Loss** resulting from any **Claim** covered under Insuring Clauses I.B., I.C., I.D. or I.E., other than Clean Up Costs, to the extent such **Claim** is brought by any security holders of the **Company** solely in their capacity as such whether directly in their own name or right or derivatively on behalf of the **Company** and such **Claim** is instigated and continuously pursued totally independent of and totally without the solicitation, assistance, active participation or intervention of the **Insureds**;

D. for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by any law concerning workers' compensation, disability benefits, unemployment compensation law, social security or other employment benefits law, the Fair Labor Standards Act (except the Equal Pay Act), the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, including any similar federal, state or local law, regulations promulgated thereunder, or any amendments thereto, or any other law based on the same violations; provided, however, this exclusion shall not apply to a **Claim** for **Retaliation**;

E. for actual or alleged violation(s) of the Employee Retirement Income Security Act of 1974 ("ERISA"), or any violation of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto or for an **Insured's** failure or refusal to establish, contribute to, pay for, insure, maintain, provide benefits pursuant to, or enroll or maintain the enrollment of an **Employee** or dependent in, any

employee benefit plan, fund or program, including contracts or agreements which are not subject to the provisions of ERISA; provided, however, this exclusion shall not apply to a **Claim** for **Retaliation**;

F.  by, on behalf of, or at the direction of any of the **Insureds**, except and to the extent such **Claim**:

    1.  is a derivative action brought or maintained by or on behalf of a securities holder of the **Company** who, when such **Claim** is first made, is acting independently of and without the solicitation, assistance, participation or intervention of any **Insured**, or

    2.  is brought by any of the **Insureds** in the form of a crossclaim, third party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** not otherwise excluded by the terms of this Policy, or

    3.  is brought by any of the **Insured Persons** for an **Employment Wrongful Act**, or

    4.  is a **Derivative Demand**, or

    5.  is brought by a receiver, liquidator, trustee or similar official of the **Company**; or

    6.  is brought by any former **Insured Person** who has not served in such capacity or as a consultant to the **Company** for at least four (4) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without any active assistance or participation of, or solicitation by, the **Company** or any other **Insured Persons** or consultants to the **Company** who are serving or have served in such capacity within such four (4) year period;

G.  against any of the **Insured Persons** of any **Subsidiary** or against any **Subsidiary** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

    1.  any **Wrongful Act** occurring prior to the date such entity became a **Subsidiary** or subsequent to the date such entity ceased to be a **Subsidiary**, or

    2.  any **Wrongful Act** occurring while such entity was a **Subsidiary** which, together with a **Wrongful Act** occurring prior to the date such entity became a **Subsidiary**, would constitute **Interrelated Wrongful Acts**;

H.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving, any **Wrongful Act** actually or allegedly committed subsequent to a **Change in Control**;

I.  against any of the **Insured Persons** serving in an **Outside Executive Position**,

    1.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** occurring prior to the date such **Insured Persons** began serving in an **Outside Executive Position** if any of the **Insured Persons**, as of such date, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this Policy; or

    2. by, on behalf of, or for the benefit of the **Outside Entity**, or one or more of the **Outside Entity's** directors, officers, trustees or equivalent executives;

J. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

    1. the public offer, sale, solicitation or distribution of securities of the **Company**, an **Outside Entity** or an **Affiliate** of the **Company**; or

    2. the actual or alleged violation of any federal, state, local or provincial statute relating to securities, including but not limited to the Securities Act of 1933 and the Securities and Exchange Act of 1934, or any rules or regulations promulgated thereunder;

provided, however, this exclusion will not apply to any offer, purchase or sale of securities of the **Company**, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933 (an "Exempt Transaction").

If at least thirty (30) days prior to an offering of securities of the **Company**, other than pursuant to an Exempt Transaction, the Underwriters receive notice of the proposed transaction and any additional information requested by the Underwriters, the **Company** may request a proposal for coverage subject to any additional terms and conditions and payment of any additional premium the Underwriters may specify in such proposal.  However, the Underwriters will not be obligated to provide such coverage;

K. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving, the purchase by the **Company** of securities of any entity whose securities are traded on any public stock exchange which purchase results in the **Company** having the right to vote for the election of such entity's directors, either directly or indirectly;

L. alleging an **Employment Wrongful Act**:

    1. involving lockout, strike, picket line, hiring of replacement workers or other similar action in connection with any labor dispute or labor negotiation or for or arising out of any alleged violation or responsibilities, duties or obligations imposed on an **Insured** under the National Labor Relations Act or amendments thereto or regulations promulgated thereunder, or any similar or related federal, state or local law or regulation;

    2. involving the liability of others assumed by an **Insured** under any contract or agreement, oral or written, except to the extent that the **Insured** would have been liable in the absence of such contract or agreement;

M. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

   1. any deliberately dishonest, fraudulent or criminal act or omission by any of the **Insureds**, or

   2. any personal profit or advantage gained by any of the **Insured Persons** to which they were not legally entitled,

   as determined by a plea agreement, an alternative dispute resolution proceeding, a judgment, settlement or a final adjudication in the underlying action or in a separate action or proceeding; provided, however, this exclusion shall not apply to **Defense Costs** incurred up until such determination is made;

N. for the return by any of the **Insured Persons** of any remuneration paid to them without the previous approval of the appropriate governing body of the **Company** provided that this exclusion shall not apply to **Defense Costs** incurred in connection with any such **Claim** until such time as it is determined by a plea agreement, an alternative dispute resolution proceeding, a judgment, settlement or a final adjudication in the underlying action or in a separate action or proceeding that such payment was unlawful;

O. with respect to Insuring Clause C. only;

   1. for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, service mark, trade name, trade secret, trade dress, or any other intellectual property rights;

   2. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture;

   3. for actual or alleged breach of written contract (other than a written employment contract), agreement, warranty, or guarantee where such **Claim** is brought by or on behalf of a party to or beneficiary of such contract, agreement, warranty, or guarantee;

   4. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged breach of duty, neglect, error, misstatement, misleading statement, act or omission in connection with the rendering of, or actual or alleged failure to render, professional services by or on behalf of the **Company** for the benefit of any other entity or person;

P. for an alleged violation of the responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**; provided, however, that in the event such **Claim** also alleges an **Employment Wrongful Act** otherwise covered by this Policy and notwithstanding the provisions of Clause V., Settlement and Defense and subject to all other terms, conditions and exclusions contained in this Policy, this exclusion does not apply to **Loss** solely applicable to that portion of the **Claim** alleging such **Employment Wrongful Act**; or

Q. for severance pay, damages, penalties, or amounts owed under an express written employment agreement or under any policy or procedure providing for payment in the event of

separation from employment; provided, however, that this exclusion shall not apply to **Defense Costs** incurred in connection with any such **Claim**.

No **Wrongful Acts** shall be imputed to any other natural person for the purpose of determining the applicability of the Exclusions M. and N.

## IV.   LIMITS OF LIABILITY, RETENTIONS, ORDER OF PAYMENTS

A.  Limits of Liability

1.   Per Claim Limits of Liability

The amount shown in Item 3.a. of the Declarations shall be the maximum Limit of Liability of the Underwriters per **Claim** under Insuring Clauses I.A., I.B. and I.C.  The amount shown in Item 3.b. of the Declarations shall be the maximum Limit of Liability of the Underwriters per **Derivative Demand** and in the aggregate for all **Derivative Demands** under Insuring Clause I.D. for the **Policy Period**.  The amount shown in Item 3.c. of the Declarations shall be the maximum aggregate Limit of Liability of the Underwriters per **Claim** and in the aggregate for all **Claims** under Insuring Clause I.E. for the **Policy Period**.  If purchased as indicated by a monetary Limit amount in Item 3.d. of the Declarations,  the amount shown in Item 3.d. shall be the maximum Limit of Liability of the Underwriters per **Claim** under Insuring Clause I.F.

The amounts shown in Items 3.a., 3.b., 3.c. and 3.d. of the Declarations shall be part of and not in addition to the Limit shown in Item 3.e. of the Declarations.

2.   Additional Limits of Liability

(a)  If purchased as indicated by a monetary Limit amount in Item 3.f. of the Declarations, the amount shown in Item 3.f. shall be the Supplemental Limit of Liability of the Underwriters for all **Claims** under Insuring Clause I.A., other than **Claims** for an **Employment Wrongful Act** or **Third-Party Wrongful Act**, which Limit shall be separate and in addition to the Limit shown in Item 3.e. of the Declarations.  The Supplemental Limit shown in Item 3.f. shall apply excess of the aggregate limit shown in Item 3.e. of the Declarations and all policies of insurance providing excess coverage.

(b)  If purchased as indicated by a monetary Limit amount in Item 3.g. of the Declarations, the amount shown in Item 3.g. shall be the Additional Defense Limit of the Underwriters applicable only to **Defense Costs** incurred in connection with **Claims** under Insuring Clauses I.A., I.B., I.C., I.E. and I.F., if purchased, which Limit shall be separate and in addition to the Limit shown in Item 3.e. of the Declarations.  Payment of **Defense Costs** for **Claims** under Insuring Clauses I.A., I.B., I.C., I.E. and I.F., if purchased, shall erode the Additional Defense Limit first and will not erode the Limits shown in Items 3a., 3.c., 3.d. and 3.e. until the Additional Defense Limit is exhausted.

3.     Aggregate Limits

The amount shown in Item 3.e. of the Declarations shall be the maximum aggregate Limit of Liability of the Underwriters under the Policy; provided, however, if:

(a)    the Supplemental Limit is purchased as indicated by a monetary Limit amount in Item 3.f. of the Declarations, then the maximum aggregate limit of the Underwriters under this Policy shall be the sum of the amount shown in Item 3.e. and the amount shown in Item 3.f.;

(b)    the Additional Defense Limit is purchased as indicated by a monetary Limit amount in Item 3.g. of the Declarations, then the maximum aggregate limit of the Underwriters under this Policy shall be the sum of the amount shown in Item 3.e. and the amount shown in Item 3.g.; or

(c)    both the Supplemental Limit and the Additional Defense Limit are purchased as indicated by monetary Limit amounts in Items 3.f. and 3.g. of the Declarations, then the maximum aggregate limit of the Underwriters under this Policy shall be the sum of the amount shown in Item 3.e., the amount shown in Item 3.f., and the amount shown in Item 3.g.

4.    If any **Claim** against the **Insureds** gives rise to an obligation both under this Policy and any other coverage, line slip or policy of insurance issued by the Underwriters or any of its affiliates to any **Outside Entity**, the Underwriters' maximum aggregate limit of liability under all such coverage, line slips or policies for all **Loss** from such **Claim** shall not exceed the greater of:

(a)    the applicable maximum aggregate limit of liability as determined under Clause IV.A.3. of this Policy, or

(b)    the maximum aggregate limit of liability under any such other coverage, line slip or policy.

5.    The payment of **Defense Costs** by the Underwriters reduces and may totally exhaust the applicable Limits of Liability.

6.    More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following times:

(a)    the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or

(b)    the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Clause VI.B.

7.    In the event more than one of the Insuring Clauses set forth in Clause I. are applicable to a **Claim**, then the Underwriters' maximum liability for such **Claim** shall not exceed the largest applicable per **Claim** Limit shown in Items 3.a., 3.c. and 3.d. of the Declarations.

8.    If any of the Limits of Liability shown in Items 3.a., 3.b., 3.c. or 3.d. are exhausted, the Underwriters' obligations for such **Claim** or **Derivative Demand** shall be completely

fulfilled and extinguished. If the applicable aggregate limit of liability as determined under Clause IV.A.3. is exhausted, the Underwriters''s obligations under this Policy shall be completely fulfilled and extinguished.

B. Retentions

1. No Retention shall apply to Insuring Clause I.A. The applicable Retention set forth in Item 4. of the Declarations shall apply with respect to **Loss** arising from each **Claim** under Insuring Clauses I.B., I.C., I.D., I.E. and I.F, if purchased.

2. The Underwriters shall be liable for only that part of **Loss** arising from a **Claim** which is excess of the applicable Retention set forth in Item 4. of the Declarations, and such Retention shall be borne by the **Insureds** uninsured and at their own risk. Any payments made to satisfy the retention or deductible under another policy of insurance shall not satisfy or apply towards the applicable Retention, or any portion thereof, under this Policy.

3. In the event more than one of the Insuring Clauses set forth in Clause I. are applicable to a **Claim**, the Retentions set forth in Item 4. of the Declarations shall be applied separately to that part of the **Loss** resulting from such **Claim** covered by each Insuring Clause. The sum of the Retentions so applied shall constitute the Retention applicable to such **Claim**. The total Retention as finally determined shall in no event exceed the largest of the Retentions applicable to Insuring Clauses that are applicable to such **Claim.**

C. Order of Payments

The Underwriters shall pay **Loss** in the order in which **Loss** is incurred. If **Loss** payable under Insuring Clause I.A. and one or more of the other Insuring Clauses is incurred contemporaneously, the Underwriters first shall pay **Loss** payable under Insuring Clause I.A. The **Parent Company** may elect through its chief executive officer to decline or defer payment under the other Insuring Clauses. The Underwriters shall have no obligation to pay **Loss** after exhaustion of the applicable Limits of Liability, regardless of whether the **Parent Company** has declined or deferred payment.

## V.    SETTLEMENT AND DEFENSE

A. If Item 5. of the Declarations indicates that this Policy is issued on a Duty-to-Defend basis:

1. The Underwriters shall have the right and duty to defend any **Claim**, including the right to select defense counsel, even if any of the allegations are groundless, false or fraudulent; provided, however, that the Underwriters shall not be obligated to defend or to continue to defend any **Claim** after the applicable Limit of Liability set forth in Item 3. of the Declarations has been exhausted. The Underwriters will give consideration to **Insured's** choice of defense counsel; however, the final decision will be made by the Underwriters.

2. The **Insureds** shall cooperate with the Underwriters and, upon the Underwriters''s request, assist in the investigation, settlement and defense of **Claims** and in enforcing rights of contribution or indemnity against any person or entity which may be liable to the **Insureds**,

shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

3. The **Insureds** shall not settle any **Claim**, select any defense counsel, incur any **Defense Costs**, admit or assume any liability, stipulate to any judgment or otherwise assume any contractual obligation without the Underwriters prior written consent, which shall not be unreasonably withheld. The Underwriters shall not be liable for any settlement, **Defense Costs**, assumed obligation, admission or stipulated judgment to which it has not consented or for which the **Insureds** are not legally obligated as a result of a **Claim** for a **Wrongful Act**. Notwithstanding the foregoing, if all **Insureds** are able to fully and finally dispose of, with prejudice, all **Claims** that are subject to one Retention for an amount not exceeding such Retention, including **Defense Costs**, then the Underwriters' consent shall not be required for such disposition.

4. The Underwriters may, with the consent of the **Insureds**, settle or compromise any **Claim** as they deem expedient. If the **Insureds** withhold consent to a settlement or compromise acceptable to the claimant and the Underwriters, then the Underwriters' liability for such **Claim** shall not exceed:

   (a) the amount for which the **Claim** could have settled or compromised and the **Defense Costs** incurred as of the date such settlement or compromise was proposed to the **Insureds**, plus

   (b) 70% of any **Loss** incurred after the date such settlement or compromise was proposed to the **Insureds**, with the remaining 30% of such **Loss** to be borne by the **Insureds** at their own risk and uninsured.

5. If both **Loss** covered by this Policy and non-covered loss are incurred, either because the **Claim** made against the **Insured** includes both covered and non-covered matters, or because a **Claim** is made against both the **Insured** and others not insured under this Policy, then such covered **Loss** and  non-covered loss shall be allocated as follows:

   (a) one hundred percent (100%) of **Defense Costs** shall be allocated to covered **Loss** except costs associated with the defense of actual or alleged violations of **Wage and Hour Laws**; and

   (b) Settlements, judgments, verdicts and awards shall be allocated between covered **Loss** and non-covered loss based upon the relative legal and financial exposures of, and the relative benefits obtained in connection with the resolution of the **Claim** as between the **Insureds'** or non-Insureds' exposure to non-covered loss, and the **Insureds'** exposure to covered **Loss**. In making such allocation determination, the **Insureds** and the Underwriters agree to use their best efforts to determine a fair and proper allocation. In the event that an allocation cannot be agreed to, then the Underwriters shall make an interim payment of the amount of **Loss** that the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of applicable law.

   Notwithstanding the above, the **Insureds** and the Underwriters agree to use their best efforts to determine a fair and proper allocation of all covered **Defense Costs** and non-covered defense costs associated with the defense of **Claims** alleging a violation of the

responsibilities, duties, or obligations imposed under any **Wage and Hour Law**.  In the event that an allocation cannot be agreed to, then the Underwriters shall make an interim payment of the amount of **Defense Costs** that the parties agree is not in dispute until a final amount is agreed upon or determined by applicable law.

B.   If Item 5. of the Declarations indicates that this Policy is issued on a Non Duty-to-Defend basis:

1.   It shall be the duty of the **Insureds** and not the duty of the Underwriters to defend **Claims**.  The Underwriters shall have the right and shall be given the opportunity to effectively associate with the **Insureds** in the investigation, defense and settlement of any **Claim** that appears reasonably likely to be covered in whole or in part hereunder.

2.   The **Insureds** shall not settle any **Claim**, select any defense counsel, incur any **Defense Costs**, admit or assume any liability, stipulate to any judgment or otherwise assume any contractual obligation without the Underwriters' prior written consent, which shall not be unreasonably withheld.  The Underwriters shall not be liable for any settlement, **Defense Costs**, assumed obligation, admission or stipulated judgment to which they have not consented or for which the **Insureds** are not legally obligated as a result of a **Claim** for a **Wrongful Act**.  Notwithstanding the foregoing, if all **Insureds** are able to fully and finally dispose of, with prejudice, all **Claims** that are subject to one Retention for an amount not exceeding such Retention, including **Defense Costs**, then the Underwriters' consent shall not be required for such disposition.

3.   Subject to Clauses IV.C. and V.B.4., the Underwriters shall advance on behalf of the **Insureds**, **Defense Costs** which the **Insureds** have incurred in connection with a **Claim** made against them, prior to the final disposition of such **Claim**, provided that to the extent it is finally established that any such **Defense Costs** are not covered under this Policy, the **Insureds**, severally according to their interests, shall repay such **Defense Costs** to the Underwriters.  The Underwriters shall pay **Defense Costs** no more than once every ninety (90) days.

4.   If both **Loss** covered by this Policy and loss not covered by this Policy are incurred, either because a **Claim** made against the **Insured** contains both covered and non-covered matters, or because a **Claim** is made against both the **Insured** and others not insured under this Policy, the **Insured** and the Underwriters will use their best efforts to determine a fair and appropriate allocation between that portion of **Loss** that is covered under this Policy and that portion of loss that is not covered under this Policy.  Additionally, the **Insured** and the Underwriters agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by the **Insured** and others.

## VI.   NOTIFICATION

A.   In the event any **Executive Officer** becomes aware that a **Claim** has been made against any of the **Insureds**, the **Insureds** shall, as a condition precedent to their rights to payment under this Policy, give to the Underwriters notice in writing of such **Claim** as soon as practicable but in no event later than the earliest of the following times:

1. sixty (60) days after the date such **Executive Officer** becomes aware of such **Claim**, or

2. sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

B. If during the **Policy Period**, except for the **Optional Extension Period**, the **Insureds** first become aware of a specific **Wrongful Act**, and if the **Insureds** during the **Policy Period**, except for the **Optional Extension Period**, give written notice to the Underwriters as soon as practicable of:

1. the specific Wrongful Act;

2. the consequences which have resulted or may result therefrom; and

3. the circumstances by which the **Insureds** first became aware thereof,

then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this Policy to have been made at the time such notice was first given.

The Underwriters shall have no obligation to cover any amounts, including any legal fees or expenses, incurred prior to the time such circumstances result in a **Claim**.

C. Notice to the Underwriters provided for in Clause VI.A. and B. shall be given to the firm shown in Item 8.a. of the Declarations. All other notices to the Underwriters under this Policy shall be given to the firm shown in Item 8.b. of the Declarations. Except with respect to notices provided for in Clause VII.C., all notices under any provision of this Policy must be made in writing and delivered by prepaid express courier, certified mail or fax. Notices given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee.

## VII. GENERAL CONDITIONS

A. Representations

By acceptance of this Policy, the **Insureds** agree:

1. that the statements in the **Application** are their representations, and that this Policy is issued in reliance upon the truth of such representations;

2. that in the event that the **Application** contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Underwriters under this Policy, this Policy shall not afford any coverage with respect to those **Insureds** who made or had knowledge of such misrepresentations;

3. that solely with respect to the coverage afforded under Insuring Clause I.A., the Underwriters shall not be entitled to rescind the Policy;

4. that this Policy shall not afford any coverage under Insuring Clause I.B. to the extent the **Company** indemnifies any of the **Insureds** who made or had knowledge of the misrepresentations set forth in Clause VII.A.2.; and

5. that this Policy shall not afford any coverage under Insuring Clause I.C., I.E. and I.F., if purchased, if the chairman of the board, president, chief executive officer, chief operating officer or chief financial officer of the **Company** made or had knowledge of the misrepresentations set forth in Clause VII.A.2.

None of the foregoing provisions in Clause VII.A., with the exception of Clause VII.A.3., shall in any other way limit or void the Underwriters' rights to rescind this Policy.

B. Adjustment

1. This Policy is issued and the premium computed on the basis of the information submitted to the Underwriters as part of the **Application**.

   In the event the **Parent Company**, after the inception date of this Policy:

   (a) (i) acquires any other entity where such entity does not trade its securities on any public stock exchange,

   (ii) acquires substantially all of the assets of another entity, or

   (iii) merges with another entity such that the **Parent Company** is the surviving entity where such entity does not trade its securities on any public stock exchange, or

   (b) creates or acquires a **Subsidiary** as defined in Clause II.CC.(d).,

   coverage shall be afforded for a period of ninety (90) days for any **Loss** in any way involving the assets acquired or the assets, liabilities, directors, officers or employees of the entity acquired or merged with, or such **Subsidiary**. Coverage beyond such ninety (90) day period shall only be available if:

   (i) written notice of such transaction or event is given to the Underwriters by the **Parent Company**;

   (ii) the **Parent Company** provides the Underwriters with such information in connection therewith as the Underwriters may deem necessary;

   (iii) the **Insureds** accept any special terms, conditions, exclusions or additional premium charge as may be required by the Underwriters; and

   (iv) the Underwriters, at their sole discretion, agrees to provide such coverage.

2. In the event any entity ceases to be a **Subsidiary** as defined herein after the inception date of this Policy, or of any policy issued by the Underwriters of which this Policy is a renewal or replacement, this Policy, subject to its terms, shall continue to apply to any of the **Insured Persons** who were covered under this Policy because of their service with such entity and to such **Subsidiary** but only with respect to any **Wrongful Act**

committed or allegedly committed prior to the time such entity ceased to be a **Subsidiary**.

3. In the event of a **Change of Control** after the inception date of this Policy or of any policy issued by the Underwriters of which this Policy is a renewal or replacement, this Policy, subject to its terms, shall continue to apply to the **Insured Persons** and to the **Company** but only with respect to any **Wrongful Act** committed or allegedly committed prior to the **Change of Control.**

C. Cancellation/Nonrenewal

1. By acceptance of this Policy, the **Insureds** hereby confer the exclusive power and authority to cancel this Policy on their behalf to the **Parent Company**. Such entity may cancel this Policy by surrender thereof to the Underwriters, or by mailing to the Underwriters written notice stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice shall be equivalent to mailing.

2. The Underwriters may cancel this Policy only for nonpayment of premium by mailing to the **Parent Company** written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The notice of cancellation shall state the reason for cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice by the Underwriters shall be equivalent to mailing.

3. If this Policy is cancelled pursuant to 1. hereinabove, the Underwriters shall retain the customary short rate portion of the premium hereon. If this Policy is cancelled pursuant to 2. hereinabove, the Underwriters shall retain the pro rata portion of the premium hereon. Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of cancellation.

4. If the Underwriters decide not to renew this Policy, the Underwriters shall mail or deliver written notice to the **Parent Company** at least sixty (60) days before the end of the **Policy Period**. The notice of nonrenewal shall state the reason for nonrenewal.

D. Other Insurance

1. This Policy shall apply in excess of any other existing valid policy including any self insured retention or deductible portion thereof, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, and regardless of whether or not any **Loss** in connection with such **Claim** is collectible or recoverable under such other policy, unless such other policy is written only as specific excess insurance over the Limits of Liability of this Policy.

2. Notwithstanding the foregoing,

     (a)   solely in respect of **Claims** for an **Employment Wrongful Act**, this Policy shall apply as primary insurance, except with respect to:

         (1)   **Claims** which include allegations covered under both a fiduciary liability policy and this Policy; or

         (2)   **Claims** brought by or on behalf of an **Independent Contractor** or leased or temporary **Employee**,

        in which case the provisions of Clause VII.D.1. shall apply; and

     (b)   solely in respect of **Claims** under Insuring Clause I.E., this Policy shall apply specifically excess of any indemnification and insurance available from the **Outside Entity**.

E.   Presumptive Indemnification

    For all purposes under this Policy, the **Company** is presumed to indemnify the **Insured Persons** to the fullest extent permitted or required by law or pursuant to the by-laws or other organizational documents of the **Company** for any **Loss**, or to advance **Defense Costs** on their behalf, except to the extent that the **Company** cannot in fact do so for reasons of **Financial Impairment.**

## VIII.   OPTIONAL EXTENSION PERIOD

A.  If this Policy is cancelled by the **Parent Company** or if the Underwriters nonrenew this Policy, then the **Parent Company** shall have the right, upon payment of an additional premium calculated at that percentage shown in Item 7.a. of the Declarations of the total premium for this Policy, to an extension of the coverage granted by this Policy with respect to any **Claim** first made during the period of time set forth in Item 7.b. of the Declarations after the end of the **Policy Period**, but only with respect to any **Wrongful Act** committed before the effective date of cancellation or nonrenewal.

B.  As a condition precedent to the right to purchase the **Optional Extension Period**, the total premium for this Policy must have been paid. The right to purchase the **Optional Extension Period** shall terminate unless written notice together with full payment of the premium for the **Optional Extension Period** is given to the Underwriters within thirty (30) days after the effective date of cancellation or nonrenewal. If such notice and premium payment is not so given to the Underwriters, there shall be no right to purchase the **Optional Extension Period**.

C.  In the event of the purchase of the **Optional Extension Period**, the entire premium for the **Optional Extension Period** shall be deemed earned at its commencement.

D.  The exercise of the **Optional Extension Period** shall not in any way increase the Limits of Liability of the Underwriters.

E.  The offer of renewal terms, conditions or premiums different from those in effect prior to renewal shall not constitute a refusal to renew for purposes of this Clause VIII.

## IX.   ASSISTANCE, COOPERATION AND SUBROGATION

The **Insureds** agree to provide the Underwriters with such information, assistance and cooperation as the Underwriters or their counsel may reasonably request, and they further agree that they shall not take any action which in any way increases the Underwriters' exposure under this Policy.

In the event of any payment under this Policy, the Underwriters shall be subrogated to the **Insureds'** rights of recovery against any person or entity. The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights including the execution of such documents as are necessary to enable the Underwriters effectively to bring suit in its name, and shall provide all other assistance and cooperation which the Underwriters may reasonably require.

## X.     ACTION AGAINST THE UNDERWRITERS

No action shall lie against the Underwriters unless, as a condition precedent thereto, the **Insureds** shall have fully complied with all of the terms of this Policy, and the amount of the **Insureds'** obligation to pay shall have been fully and finally determined either by judgment against them or by written agreement between them, the claimant and the Underwriters. Nothing contained herein shall give any person or organization any right to join the Underwriters as a party to any **Claim** against the **Insureds** to determine their liability, nor shall the Underwriters be impleaded by the **Insureds** or their legal representative in any **Claim**.

## XI.     ENTIRE AGREEMENT

By acceptance of this Policy, the **Insureds** agree that this Policy embodies all agreements existing between them and the Underwriters or any of their agents relating to this insurance. Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Underwriters shall not effect a waiver or a change in any part of this Policy or estop the Underwriters from asserting any right under the terms of this Policy, nor shall the terms be waived or changed except by written endorsement or rider issued by the Underwriters to form a part of this Policy.

## XII.     TERRITORY

This Policy shall apply to **Claims** made against the **Insureds** anywhere in the world.

## XIII.     VALUATION AND CURRENCY

All premiums, limits, Retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States. If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in the *Wall Street Journal* on the date the judgment becomes final or payment of the settlement or other element of **Loss** is due.

## XIV.     BANKRUPTCY

Bankruptcy or insolvency of the **Company** or of any of the **Insured Persons** shall not relieve the Underwriters of their obligations nor deprive the Underwriters of its rights or defenses under this Policy.

## XV.   AUTHORIZATION

By acceptance of this Policy, the **Parent Company** agrees to act on behalf of the **Insureds** with respect to the giving and receiving of any notice provided for in this Policy, the payment of premiums and the receipt of any return premiums that may become due under this Policy, and the agreement to and acceptance of endorsements, and the **Insureds** agree that the **Parent Company** shall act on their behalf.

## XVI.   HEADINGS

The descriptions in the headings and subheadings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

## XVII.   SERVICE OF SUIT

It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters at the request of any person or entity insured hereunder will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed that service of process in such suit may be made upon the firm shown under Item 10. of the Declarations, and that in such suit instituted against any one of the Underwriters upon this Policy, Underwriters will abide by the final decision of such court or of any appellate court in the event of an appeal.

The firm shown under Item 10. of the Declarations is authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of any person or entity insured hereunder to give a written undertaking to such person or entity that it will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to the statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or any of their successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of any person or entity insured hereunder or any beneficiary hereunder arising out of this Policy, and hereby designate the firm shown in Item 10. of the Declaration as the firm to whom the said officer is authorized to mail such process or a true copy thereof.

## XVIII.   CHOICE OF LAW

Any dispute involving this Policy shall be resolved by applying the law of the state designated in Item 11. of the Declarations.

## XIX. SHORT RATE TABLE AND PROCEDURES

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the Premium for which this insurance is written it is agreed that in the event of cancellation thereof by an Insured the earned Premium shall be computed as follows:

### SHORT RATE CANCELLATION TABLE

**A.** For insurance written for one year:

| Days Insurance in force | Percentage of one Year Premium | Days Insurance in force | Percentage of one Year Premium |
|---|---|---|---|
| 1-54 | 25 | 192-196 | 63 |
| 55-58 | 26 | 197-200 | 64 |
| 59-62 (2 months) | 27 | 201-205 | 65 |
| 63-65 | 28 | 206-209 | 66 |
| 66-69 | 29 | 210-214 (7 months) | 67 |
| 70-73 | 30 | 215-218 | 68 |
| 74-76 | 31 | 219-223 | 69 |
| 77-80 | 32 | 224-228 | 70 |
| 81-83 | 33 | 229-232 | 71 |
| 84-87 | 34 | 233-237 | 72 |
| 88-91 (3 months) | 35 | 238-241 | 73 |
| 92-94 | 36 | 242-246 (8 months) | 74 |
| 95-98 | 37 | 247-250 | 75 |
| 99-102 | 38 | 251-255 | 76 |
| 103-105 | 39 | 256-260 | 77 |
| 106-109 | 40 | 261-264 | 78 |
| 110-113 | 41 | 265-269 | 79 |
| 114-116 | 42 | 270-273 (9 months) | 80 |
| 117-120 | 43 | 274-278 | 81 |
| 121-124 (4 months) | 44 | 279-282 | 82 |
| 125-127 | 45 | 283-287 | 83 |
| 128-131 | 46 | 288-291 | 84 |
| 132-135 | 47 | 292-296 | 85 |
| 136-138 | 48 | 297-301 | 86 |
| 139-142 | 49 | 302-305 (10 months) | 87 |
| 143-146 | 50 | 306-310 | 88 |
| 147-149 | 51 | 311-314 | 89 |
| 150-153 (5 months) | 52 | 315-319 | 90 |
| 154-156 | 53 | 320-323 | 91 |
| 157-160 | 54 | 324-328 | 92 |
| 161-164 | 55 | 329-332 | 93 |
| 165-167 | 56 | 333-337 (11 months) | 94 |
| 168-171 | 57 | 338-342 | 95 |
| 172-175 | 58 | 343-346 | 96 |
| 176-178 | 59 | 347-351 | 97 |
| 179-182 (6 months) | 60 | 352-355 | 98 |
| 183-187 | 61 | 356-360 | 99 |
| 188-191 | 62 | 361-365 (12 months) | 100 |

**B.** For insurances written for more or less than one year:

1. If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual Premium determined as for an insurance written for a term of one year.
2. If this insurance has been in force for more than 12 months;
   (a) Determine full annual Premium as for an insurance written for a term of one year.
   (b) Deduct such Premium from the full insurance Premium, and on the remainder calculate the pro-rata earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.
   (c) Add Premium produced in accordance with items a) and b) to obtain earned Premium during full period insurance has been in force.

## ADDITIONAL CLAUSES AND ENDORSEMENTS

### ENDORSEMENT NUMBER 1

It is hereby understood and agreed that wherever the word "Policy" appears herein same shall be deemed to read "Certificate".

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

**SEVERAL LIABILITY NOTICE**

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

08/94
LSW1001 (Insurance)

**CHOICE OF LAW CLAUSE**

It is hereby understood and agreed by both the Insured and Underwriters that any dispute concerning the interpretation of this Policy shall be governed by the laws of New York, U.S.A.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

623AFB00113

**NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)**

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

> Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.  Under any Liability Coverage, to injury, sickness, disease, death or destruction:

   (a) with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.   As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
NMA1256

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)**

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
NMA1477

**WAR AND TERRORISM EXCLUSION ENDORSEMENT**

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1. war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2. any act of terrorism.

   For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918

**SMALL ADDITIONAL OR RETURN PREMIUMS CLAUSE (U.S.A.)**

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this Insurance is written, it is understood and agreed that whenever an additional or return premium of $2 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

NMA1168

**Effective date of this Endorsement:** 01-Sep-2018
**This Endorsement is attached to and forms a part of Policy Number:** AUGBC00186I


### U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
### NEW & RENEWAL BUSINESS ENDORSEMENT

*This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended, as summarized in the disclosure notice.*

In consideration of an additional premium of USD NIL paid, it is hereby noted and agreed with effect from inception that the Terrorism exclusion to which this Insurance is subject, shall not apply to any "insured loss" directly resulting from any "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the type insured by this Insurance directly resulting from an "act of terrorism" as defined in TRIA. The coverage provided by this Endorsement shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates. The Terrorism exclusion, to which this Insurance is subject, applies in full force and effect to any other losses and any act or events that are not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject. All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on the Underwriter's liability for payment for terrorism losses.


LMA5218
12 January 2015

**DELETE COVERAGE FOR EMPLOYMENT PRACTICES WRONGFUL ACTS**

This endorsement modifies insurance provided under the following:

**BEAZLEY ONE – PRIVATE COMPANY LIABILITY INSURANCE POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:
1.    Clause I. Insuring Clauses F. is deleted.
2.    Clause II. Definitions R.2. is deleted.
3.    Clause II. Definitions FF. 3 and 4 are deleted.
4.    Clause III. Exclusions A. is deleted and replaced with the following:
     A.    for actual or alleged libel, slander, defamation, bodily injury, sickness, disease, death, false arrest, false imprisonment, assault, battery, mental anguish, emotional distress, invasion of privacy, or damage to or destruction of any tangible property (including loss of use thereof);
5.    Clause III. Exclusions C.2.(b) is deleted.
6.    Clause III. Exclusions D. and E. are amended by deleting the following phrase:
     provided, however, that this exclusion shall not apply to a **Claim** for **Retaliation**;
7.    Clause III. Exclusions F.3. is deleted.
8.    Clause III. Exclusions L. is deleted.
9.    Clause III. Exclusions P. is deleted and replaced with the following:
     P.    for an alleged violation of the responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**;
10.    The Underwriters shall not be liability to make any payment for **Loss** in connection with or resulting from any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any **Employment Wrongful Act** or **Third Party Wrongful Act**.
11.    Clause VII. General Conditions D.2. is deleted.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**This Endorsement is attached to and forms a part of Policy Number: AUGBC00186I**

**SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT OR ACT EXCLUSION**

This endorsement modifies insurance provided under the following:

**BEAZLEY ONE - PRIVATE COMPANY LIABILITY INSURANCE POLICY**

**In consideration of th e premium charged for the Policy , it is hereb y understood and ag reed that the Underwriters shall not be liable to make an y payment for** Loss **in connection w ith or resulting from any** Claim**:**

1. **alleging, arising out of, based upon, attributable to or in anyway related directly or indirectly in part o r in whole, to notices, events, investigations or actions scheduled below (hereinafter "**Events**"); the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) an y** Event**; or (b) any** Claim(s) **arising from an y** Event**; or any** Wrongful Act**, underlying facts, circumstances, acts or omissions in any way relating to any** Event**.**

*EVENTS:*

      **Matters regarding Mr. DeCinces as per the letter dated 2nd June 2009**

2. alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to any such **Event(s)** or any **Interrelated Wrongful Act**, regardless of whether or not such **Claim** involved the same or different **Insureds**, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

       All other terms and conditions of this Policy remain unchanged.

BSLPC00010605

**ENDORSEMENT. 2**      **Attaching to and forming part of Certificate No.: AUGBC00186I**

**In the name of:**      **Ruby's Diner, Inc. and as more fully stated within the Application**

---

It is hereby understood and agreed that with effect from December 15, 2016, within the Declarations
**ITEM 3. LIMIT OF LIABILITY, item 3. F is** amended to read as follows

  **ITEM 3.**    **LIMIT OF LIABILITY:**

        (f)  **3,000,000**     as a Supplemental Limit for Claims made against Insured Persons under Insuring Clause I.A per Claim and in the aggregate for the Policy Period in accordance with clause IV.A.2(a). (Purchase of Supplemental Limit indicated by a monetary Limit amount here in this item 3.f)

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**DATED IN Downers Grove, Illinois: September 20, 201**9

## SECURITY DETAILS

ATTACHING TO CERTIFICATE NUMBER: AUGBC00186I

ATTACHING TO AUTHORITY REFERENCE NUMBER: **B0391AC1802008**

HEREON:              100%

SECURITY:      CERTAIN UNDERWRITERS AT LLOYD'S

---

| PROPORTION | SYNDICATE | |
|---|---|---|
| 18.00% | AFB | 0623 |
| 82.00% | AFB | 2623 |

ALLEGIANCE UNDERWRITING GROUP

*0051067*

### RENEWAL APPLICATION FOR
## COMBINED EMPLOYMENT PRACTICES, DIRECTORS' & OFFICERS', FIDUCIARY and CRIME POLICY

---

**INSTRUCTIONS:**
1. Answer all questions (if not applicable, show N/A) and attach all additional information/explanations as required.
2. Application must be dated and signed.
3. "Applicant" refers to the company, its predecessors, and all proposed Insureds, including Subsidiaries.

---

**I.** **General Information**

**A.** Name: _Ruby's Diner Inc. & Beachcomber Management, LLC_

**B.** Address (if different from last year): _____

**C.** Person to contact: _Ted Belshe, EVP  tbelshe@rubys.com   949.644.7829_
(name, title, telephone, e-mail address) *(This individual is hereby designated to receive any and all notices from Underwriters or their authorized representatives concerning this insurance)*

**D.** Does the Applicant anticipate any merger, acquisition, or addition of any operations that would comprise a twenty percent (20%) or more increase over the current number of employees?                    Yes     No
*(If yes, please provide details on a separate sheet)*

**E.** In the past twelve (12) months, has your total number of employees decreased by more than ten percent (10%) or five (5) employees, whichever is **greater**, through any reduction in force, systematic lay-off or by closure of any division, office or facility that you own or operate?                    Yes     No
*(If Yes, please complete the Reduction In Force supplement (E))*

**F.** In the next twelve (12) months, do you anticipate the total number of your employees to decrease by more than ten percent (10%) or five (5) employees, whichever is **greater**, through any reduction in force, systematic lay-off or by closure of any division, office or facility that you own or operate?                    Yes     No
*(If Yes, please complete the Reduction In Force supplement (F))*

**G.** If, during the next 12 months, circumstances of which you are currently unaware, make it necessary for you to implement a Reduction In Force, that affects ten percent (10%) of your workforce or five (5) Employees, whichever is greater. Do you agree that you will consult with, and adopt the advice of the HR Experts at EPLI PRO (TEL: 800-387-4468

Allegiance: CEPDOPLIapp (245007v1)

Page 1 of 7

or EMAIL: HRdirectors@ePlaceInc.com)? This is part of the free loss control services included with the purchase of this insurance policy. You may also utilize in-house counsel for this Reduction in Force procedure, but only if that counsel is qualified and experienced in the practice of labor and employment.

Yes    No

H.    Request:  Please attach a copy of the latest audited financials or, if not previously audited, please complete the following for the most recently concluded fiscal year:

| | | | |
|---|---|---|---|
| Annual Revenue: | 33,718,261 | Current Assets: | 2,298,197 |
| Operating Income: | 416,136 | Current Liabilities: | 14,015,032 |
| Net Income: | (222,275) | Total Assets: | 7,908,320 |
| Annual Interest: | 27,716 | Total Long Term Debt: | 7,454,912 |
| Shareholder Equity: | 13,270,957 | Total Liabilities: | 7,908,320 |

For Fiscal Year Ending: 12/30/2018

(mm) (dd) (yyyy)

## II.   Employees

(To be completed by Applicants requesting EPL Coverage; please include all Subsidiary employee information on separate sheet)

A.    Number of employees:    Full Time: 124    Part Time: 378

B.    Salary ranges *(including bonuses, dividends and commissions)*

| | Number of full time employees | Number of part time employees |
|---|---|---|
| $ 75,000 or less   : | 117 | 378 |
| $ 75,001 to $150,000  : | 6 | |
| $150,001 and over   : | 1 | |

C.    Does the Applicant use seasonal or temporary employees?    Yes   No

If so, when and how many? summer, appr 120

Are these employees included in A and B above?    Yes   No

D.    Does the Applicant use leased workers?    Yes   No

If yes, how many have been retained by the Applicant in the past 12 months?    N/A

Are these employees included in A and B above?    N/K  Yes   No

E.    Does the Applicant use independent contractors?    Yes   No

Allegiance: CEPDOPLIapp (245007v1)

Page 2 of 7

If Yes, how many?
Do you want coverage for these Independent Contractors?　　　　Yes　　No

**F.** In the past 12 months, how many <u>officers</u> have left your employ?

Of the above, how many were terminated?

**G.** In the past 12 months, how many <u>other employees</u> have left your employ?

Of the above, how many were terminated?


## III. Corporate Information
(To be completed by Applicants requesting D&O Coverage)

**A.** Does any person or entity own 10% or more of any class of shares issued by the Applicant?
*(If yes, please provide details on a separate sheet)*　　　　Yes　　No

**B.** Has the Applicant at any time over the last three years been in breach of any debt covenants or loan agreements?
*(If yes, please provide details on a separate sheet)*　　　　Yes　　No

**C.** Has the Applicant:

　(1)　filed within the past 12 months or does it contemplate filing within the next 12 months any registration statement with the Securities and Exchange Commission for a public offering of securities?
　　*(If yes, attach a copy of prospectus)*　　　　Yes　　No

　(2)　issued within the past 12 months or does it contemplate issuing within the next 12 months any shares (common or otherwise)?
　　*(If yes, please provide details on a separate sheet)*　　　　Yes　　No

　(3)　any plans within the next 12 months for any merger, acquisition, consolidation or tender offer?
　　*(If yes, please provide details on a separate sheet)*　　　　Yes　　No

*Ruby's is in CH. 11 Reorganizing with a plan sponsor & planned exit, Nov. 2019 w/ sponsor becoming majority owner & current owner remaining w/ reduced/equity*

## IV. Fiduciary Information

**A.** Does the Applicant have more than 5 plans to be covered under the proposed insurance?
*(If the answer is yes, please provide details on a separate sheet)*　　　　Yes　　No

**B.** Indicate the type of plans to be assured:
　1)　Pension　　　　　　　　　　　　　　　　　Yes　　No
　2)　Welfare Sharing　　　　　　　　　　　　　Yes　　No

Allegiance: CEPDOPLIapp (245007v1)

Page 3 of 7

3) Profit Sharing — Yes  No
4) Employee Stock Ownership — Yes  No
5) 401k — Yes  No
6) Defined Contribution — Yes  No
7) Defined Benefit — Yes  No

C. Total Number of Employees enrolled in all plans

D. Total asset value of the combined plans for the most recent fiscal year

E. Do all plans conform to the standards of elegibility, participation, vesting and other provisions of the Employee Retirement Income Security Act of 1974, as amended? Yes  No

F. Are the plans reviewed at least annually to assure that there are no violations of any plan trust agreements, prohibited transactions or party in interest rules? Yes  No

G. Are any plans under funded by more than 30%? Yes  No
*(If the answer is yes, please provide details on a separate sheet)*

H. Does the Applicant have any delinquent contributions to any plan? Yes  No
*(If the answer is yes, please provide details on a separate sheet)*

I. Does the Applicant anticipate terminating, suspending, merging or dissolving any plans within the next 18 months? Yes  No
*(If the answer is yes, please provide details on a separate sheet)*

J. Are more than 10% of the assets of any plan, other than an Employee Stock Ownership Plan, invested in any securities of or loan to the Applicant? Yes  No
*(If the answer is yes, please provide details on a separate sheet)*

V. **Crime Information**   N/X

A. Number of officers and employees who handle, have custody of or maintain records of money, securities or other property

B. Is there an annual audit or review performed by an independent CPA on the books and accounts, including a complete verification of all securities, shares and bank balances? Yes  No

C. Are bank accounts reconciled by someone not authorized to deposit or withdraw from those accounts? Yes  No

D. Is counter signature of checks required? Yes  No

Allegiance: CEPDOPLIapp (245007v1)

Page 4 of 7

E.   Are pre-authorized controls maintained for all programmers and operators?

                                                   Yes    No

F.   Do audit practices include tests to detect unauthorized programming changes?

                                                   Yes    No

G.   Are computerized cheques writing operations segregated from departments that authorize cheques?

                                                   Yes    No

## VI.   Loss History

A.  Has the applicant reported all **claims** to underwriters or underwriters' representatives?

                                                   (Yes)    No

(If not, Please complete the attached supplement).

Please ensure that additional information, as requested in this application, is attached.

The Applicant warrants after full investigation and inquiry that the statements set forth herein are true and include all material information.

The Applicant on behalf of all proposed Insureds further warrants that if the information supplied on this application changes between the date of this application and the inception date of the Policy, it will immediately notify Underwriters of such change. Signing of this application does not bind Underwriters to offer, nor the Applicant to accept, insurance, but it is agreed that this application shall be the basis of the insurance and will be attached and made a part of the Policy should a policy be issued.

| 8-14-19 | | EVP |
|---|---|---|
| Date | Signature of Applicant's Chairman of the Board or President | Title |

| 8-14-19 | | AA |
|---|---|---|
| Date | Signature of Applicant's Human Resources Representative | Title |

### Reduction In Force Supplement (E)

A.  How many employees were laid off? _____ 30

B.  What date(s) did the lay-off's take place? _____ 1-30-19

C.  Did you consult with and follow the recommendations of a lawyer who specializes in labor and employment law as respects the implementation of such reduction, lay-off or closure?  (Yes)   No

D.  Were severance packages offered to all laid-off employees?  Yes   (No)

E.  Were signed releases gained from all laid-off employees?  Yes   No

F.  Were exit interviews completed with all laid-off employees?  Yes   No

G.  Did any of the laid off employees express that they were considering bringing any sort of complaint or claim?  Yes   (No)

H.  Please provide available details on the above.
    Lease ended at Ruby's Yorba Linda location no renewal reinstated.

## Reduction In Force Supplement (F)

A.  How many employees will be laid off?                              _____

B.  What date(s) will the lay-off be effective?                       _____

C.  Do you agree to consult with and follow the recommendations of a lawyer who
    specializes in labor and employment law as respects the implementation of such
    reduction, lay-off or closure?                              Yes        No

D.  Will severance packages be offered to all laid-off employees?   Yes        No

E.  Will signed releases be gained from all laid-off employees?     Yes        No

F.  Will exit interviews be completed with all laid-off employees?  Yes        No

G.  Please provide available details on the above.

Allegiance:  CEPDOPLIapp (245007v1)

# LLOYD'S

One Lime Street London EC3M 7HA